UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBBIE MOUZON,

                              Plaintiff,

                 -against-

UNITED STATES OF AMERICA et al.,

                              Defendants.

**OPINION AND ORDER**

No. 23-CV-10911 (PMH)

PHILIP M. HALPERN, United States District Judge:

Robbie Mouzon ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, commenced this action against the United States of America, the Department of Justice ("DOJ"), and the individual defendants Dr. Amy Boncher, Aaron Churchill, Jamal Jamison, Joseph Keahon, Dr. Ellen Mace-Leibson, Colette Peters, Beth Reese, and Ryan Rossi (the "Individual Defendants" and collectively, "Defendants") on December 14, 2023.[1] (Doc. 1, "Compl.").

Defendants, with the Court's leave, filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on August 16, 2024. (Doc. 40; Doc. 41, "Def. Br."; Doc. 42). Plaintiff opposed the motion on November 12, 2024 (Doc. 50, "Pl. Br."), and it was fully briefed with the filing of Defendants' reply on November 22, 2024 (Doc. 52, "Reply").

For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

## <u>BACKGROUND</u>

Plaintiff alleges that on March 16, 2023, he was working construction at FCI Otisville, where he was incarcerated. (Compl. ¶¶ 2, 12). Plaintiff alleges that he was severely injured as a result of performing that work without personal protective equipment ("PPE") pursuant to

---

[1] Plaintiff originally named the Bureau of Prisons ("BOP") as a defendant as well. The Court *sua sponte* dismissed Plaintiff's claims against the BOP under the doctrine of sovereign immunity. (Doc. 9).

Defendant Keahon's order. (*Id*. ¶ 12). Specifically, Plaintiff was removing sheet metal without PPE, which resulted in serious injuries to the fourth and fifth fingers of his left hand; the fourth finger was disfigured, and the fifth finger suffered a deep laceration and was fractured. (*Id*. ¶¶ 12-13). Plaintiff was taken to the medical unit and then rushed to the emergency room where hand surgery was performed to repair the damages. (*Id*. ¶ 14). Plaintiff was returned to FCI Otisville with a treatment plan from the orthopedic surgeon. (*Id*.).

Plaintiff asserts that Defendants Rossi and Keahon knew of the dangers of working with sheet metal without PPE, and that PPE was available on the date that Plaintiff was injured. (*Id*. ¶¶ 16-19). Plaintiff further asserts that Defendants Rossi and Churchill failed to properly train Defendant Keahon to "follow O.S.H.A. regulations," and that all Defendants' actions failed to meet proper standards. (*Id*. ¶ 20(1)). Plaintiff alleges that because Defendants knew of the dangers of working without PPE, they were deliberately indifferent to Plaintiff's harm. (*Id*. ¶ 21(1)). He further alleges that Defendant Mace's delay in medical treatment and follow-up treatment after surgery fell below the standard of adequate care, and because of Defendant's inadequate care, Plaintiff now suffers from nerve damage and numbness that may result in permanent injury or loss. (*Id*. ¶ 22(1-3)). Plaintiff asserts that he has exhausted his administrative remedies with respect to all claims. (*Id*. ¶ 24).

This litigation followed.

## STANDARD OF REVIEW

I.    Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000)).[2] "The party invoking federal jurisdiction bears the burden of establishing jurisdiction exists." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009). However, "[w]hen the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint . . . the plaintiff has no evidentiary burden," and "[t]he task of the district court is to determine whether the [complaint] 'alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" *Carter v. Healthport Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). Moreover, when deciding a Rule 12(b)(1) motion, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers*, 558 F.3d at 143.

When a defendant seeks dismissal under Rule 12(b)(1) "as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II.     Rule 12(b)(6) Standard

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

---

[2] Unless otherwise noted, all case quotations omit internal quotation marks, citations, alterations, and footnotes.

*Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum

4

pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

Plaintiff's claims, liberally construed, are brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq.*, and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), alleging that Defendants' negligence, failure to train, and failure to protect caused Plaintiff to be severely injured, and that Defendants denied Plaintiff adequate medical attention for his injuries.

Defendants seek dismissal of the Complaint on the basis that: (i) the Court does not have subject matter jurisdiction over Plaintiff's FTCA claims of negligence and medical malpractice because compensation under the Inmate Accident Compensation Act ("IACA") is the exclusive remedy for claims arising from workplace injuries sustained by inmates in BOP custody and from any medical care related to those injuries; and (ii) Plaintiff's Eighth Amendment *Bivens* claims

against the Individual Defendants fail due to lack of a remedy and failure to state a claim. The Court agrees.

I.    <u>Plaintiff's Tort Claims</u>

The Court lacks subject matter jurisdiction over Plaintiff's FTCA claims because they fall within the scope of IACA.  The IACA is the exclusive remedy for federal inmates who suffer work-related injuries. 18 U.S.C. § 4126(c)(4) (providing for "compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined"); 28 C.F.R. § 301.319 ("Inmates who are subject to the provisions of these Inmate Accident Compensation regulations are barred from recovery under the Federal Tort Claims Act." (citing *U.S. v. Demko*, 385 U.S. 149 (1966))). Courts in the Second Circuit have concluded the IACA also "serves as the exclusive remedy when an inmate's work-related injury is further aggravated by negligence or medical malpractice on the part of prison medical personnel." *Marquez-Ortiz v. United States*, No. 20-CV-05793, 2023 WL 3568806, at *2 (S.D.N.Y. May 18, 2023); *Giraldo v. United States*, No. 14-CV-05568, 2015 WL 4078751, at *1 (E.D.N.Y. July 6, 2015); *Barrett v. Goldstein*, No. 07-CV-02483, 2009 WL 1873647, at *4 (E.D.N.Y. June 29, 2009).

Plaintiff argues in opposition that his claim is distinguishable from an IACA claim but does not explain how. (Pl. Br. at 2-3). Plaintiff's claims fall squarely within the scope of the IACA. The Complaint asserts that when Plaintiff suffered injury to his fingers, he was engaged in work activity in connection with his construction duties as an inmate at FCI Otisville. He alleges that his work-related injury was further aggravated by delay in medical treatment and that follow-up treatment by Defendants after surgery fell below the standard of adequate care. Plaintiff also submitted a claim pursuant to IACA regulations in which he indicated the injury was "Work Related." (Doc.

42-2 at 3). Because the IACA applies to Plaintiff's tort claims, this Court lacks subject-matter jurisdiction, and the claims are dismissed.

II.    Plaintiff's Eighth Amendment Claims

Plaintiff alleges that Defendants' failure to train and failure to protect caused him to become severely injured, and that they denied Plaintiff adequate medical attention for his injuries, all in violation of his Eighth Amendment rights. "[T]he United States is immune from constitutional tort claims against the United States, its agencies, or federal employees sued in their official capacities." *Perez v. Hawk*, 302 F. Supp. 2d 9, 18 (E.D.N.Y. 2004). Thus, to the extent Plaintiff proceeds against the United States, federal agencies, and federal employees in their official capacities for violations of his constitutional rights, regardless of the form of relief requested, Plaintiff cannot proceed under *Bivens*. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994); *Story v. Cent. Intel. Agency*, No. 24-CV-00631, 2024 WL 4467414, at *5 (N.D.N.Y. Oct. 10, 2024), *adopted by*, 2024 WL 4849844 (N.D.N.Y. Nov. 21, 2024).

Under *Bivens*, a plaintiff can sue a federal official or employee in their individual capacity for an alleged constitutional violation in certain specific circumstances. The United States Supreme Court has recognized implied causes of action under *Bivens* in three contexts: (1) unreasonable search and seizure under the Fourth Amendment, *Bivens*, 403 U.S. 388 (1971); (2) employment discrimination under the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) inadequate medical treatment of a convicted prisoner under the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). After deciding these three cases, the Supreme Court "made [it] clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017).

7

The Supreme Court in *Ziglar* developed a two-step analysis for *Bivens* claims which asks: (1) whether the case presents "a new *Bivens* context," that is, whether it is "'meaningful[ly]' different from the three cases in which the Court has implied a damages action," and, (2) if so, whether there are "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Ziglar*, 582 U.S. at 136). More recently, in *Egbert*, the Supreme Court narrowed its test for when a court may create a damages remedy for a constitutional violation by a federal official under *Bivens*. While not overruling the two-step approach outlined in *Ziglar*, the Court clarified in *Egbert* that "those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492. Rather than focusing on the specific facts of a given case, courts must ask whether judicial intrusion into a given field might be harmful or inappropriate. Under this approach, even if a court finds that a case presents "parallel circumstances" with prior cases in which a *Bivens* remedy has been found, it may not find a *Bivens* remedy unless it also decides that there is no rational reason to think that Congress is better equipped to create such a remedy. *Id*. at 501.

The only Eighth Amendment case in which the Supreme Court previously recognized a *Bivens* remedy was *Carlson*, and Plaintiff's claims of failure to protect and failure to train are wholly different theories from the claim at issue in *Carlson*. *See, e.g., Ballard v. Dutton*, No. 23-6416, 2024 WL 4039606, at *1 (2d Cir. Sept. 4, 2024) (holding that a *Bivens* remedy is not available for a failure-to-protect claim); *Shapiro v. Goldman*, No. 14-CV-10119, 2016 WL 4371741, at *22 (S.D.N.Y. Aug. 15, 2016) (noting *Bivens* remedy may not be available in context of failure to train claim for passive constitutional violation based on the theory of respondeat

8

superior), *aff'd*, 696 F. App'x 532 (2d Cir. 2017).[3] Plaintiff's deliberate indifference to medical needs theory, although it is the same claim for relief as that raised in *Carlson*, nevertheless presents a new *Bivens* context.

Plaintiff alleges that post-surgery follow-up care was delayed, causing nerve damage and numbness in his finger that may be permanent. (Compl. ¶ 22(1-3)). The severity of the alleged indifference to Plaintiff's medical needs "varies substantially from that presented to the Supreme Court in *Carlson*. The defendants, in *Carlson*, had been 'fully apprised' of the 'gross inadequacy' of the medical conditions at the plaintiff's prison. . . . The defendants failed to provide the plaintiff with medical care for 8 hours after an asthmatic attack[;] . . . gave him medication that actually made his attack more severe; and treated him with medical equipment that was known to be ineffective. . . . All of that misconduct resulted in the plaintiff's death." *Bravo v. U.S. Marshals Serv.*, 684 F. Supp. 3d 112, 125 (S.D.N.Y. 2023) (citing *Carlson*, 446 U.S. at 17 n. 1). "[Plaintiff's] allegations involve conduct that is substantially less severe than that at issue in *Carlson*, and therefore, raise a new *Bivens* context." *Id.*; *see also Bettis v. Grijalva*, No. 21-CV-07505, 2023 WL 4141869, at *6 (S.D.N.Y. June 23, 2023) ("Courts have routinely found variances in circumstances and severity render deliberate indifference claims different from *Carlson* and thus arise in a 'new context'"); *Edwards v. Gizzi*, No. 20-CV-07371, 2022 WL 309393, at *7 (S.D.N.Y. Feb. 2, 2022) (finding allegation that officers broke prisoner's arm and left him in extreme pain to be

---

[3] With respect to the supervisory Defendants against whom Plaintiff presses his failure to train claim, Plaintiff alleges that Rossi and Churchill failed to properly train Keahon and that they knew of the dangers of working without PPE. (Compl. ¶¶ 20-21). With respect to Boncher, Peters, Reese, and Jamison, Plaintiff claims that they were "responsible to ensure that all the officials in FCI Otisville . . . train all the inmates . . . and also provide them the needed PPE." (Doc. 22 at 1-2). Plaintiff has "not alleged a 'pattern of similar constitutional violations by untrained employees,' which is 'ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.'" *Shapiro*, 2016 WL 4371741, at *22 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). "This is because without notice of deficient training, policymakers cannot be said to have deliberately chosen a training policy that violates constitutional rights." *Id.*

"meaningfully different from a failure to provide life-saving medical care to an inmate with asthma"), *aff'd*, 107 F.4th 81 (2d Cir. 2024).

Special factors also militate against extension of *Bivens* in this context.  If there are "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy . . . courts must refrain from creating the remedy." *Ziglar*, 582 U.S. at 137. "Most importantly, the Executive branch, through the Bureau of Prisons, provides an administrative grievance process for inmates to lodge complaints about their confinement." *Ballard*, 2024 WL 4039606, at *2 (citing Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996); 28 C.F.R. § 542.10). That the PLRA "does not provide for a standalone damages remedy against federal jailers" is "legislative action suggesting that Congress does not want a damages remedy" which "is itself a factor counseling hesitation." *Bravo*, 684 F. Supp. 3d at 125-26 (citing *Ziglar*, 582 U.S. at 148).

"Additionally, where a plaintiff has at his disposal an alternative remedial structure that would provide the same or similar relief in the absence of an implied remedy, courts decline to extend the *Bivens* remedy." *Edwards*, 2022 WL 309393, at *8. For example, "several courts in this District have found the FTCA to qualify as an alternative remedy to *Bivens*." *Id*. (citing *Powell v. United States*, No. 19-CV-11351, 2020 WL 5126392, at *10 (S.D.N.Y. Aug. 31, 2020) and collecting cases). That Plaintiff may be barred from recovery under the FTCA "is irrelevant" as "it is the overall comprehensiveness of the statutory scheme at issue, not the adequacy of the particular remedies afforded, that counsels judicial caution in implying *Bivens* actions."[4] *Id*. at 8, n.7.

---

[4] The Court notes that IACA may likewise "qualify as an alternative remedy to *Bivens*." *Edwards*, 2022 WL 309393, at *3. Congress, in enacting IACA, has legislated in this prison workplace field, and "elected to carefully define the scope of workplace liability for prison industries," *Hampton v. Jones*, No. 19-CV-0751, 2021 WL 9541608, at *8 (M.D. Pa. Aug. 2, 2021), *adopted by*, 2021 WL 9541609 (M.D. Pa. Sept. 29, 2021), *aff'd*, No. 21-2880, 2022 WL 4820355 (3d Cir. Oct. 3, 2022); and the Supreme Court has held that

The Court therefore declines to extend a *Bivens* remedy to Plaintiff's Eighth Amendment claims against Defendants. Accordingly, Defendants' motion to dismiss Plaintiff's *Bivens* claims is granted.[5]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED. Plaintiff's claims under the FTCA are dismissed without prejudice and his claims under *Bivens* are dismissed with prejudice.

While "[d]istrict courts should frequently provide leave to amend before dismissing a pro se complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Because the nature of the defects in Plaintiff's claims, as discussed herein, would render

---

IACA "presumably is the exclusive remedy to protect that group," *Demko*, 385 U.S. at 152. Courts in other Circuits have declined to extend *Bivens* to Eighth Amendment cases brought by federal inmates injured in the prison workplace in light of the alternative remedy offered by IACA and the other special factors raised by the existence of that statutory scheme. *See Hampton*, 2021 WL 9541608, at *8; *Jones v. United States*, No. 18-CV-01734; 2019 WL 3360644, at *8 (D.S.C. June 24, 2019), *adopted by*, 2019 WL 3345997 (D.S.C. July 25, 2019); *Johnson v. Simpson*, No. 19-CV-00282, 2019 WL 7284994, at *2 (D.S.C. Feb. 11, 2019), *adopted by*, 2019 WL 4784414 (D.S.C. Oct. 1, 2019), *aff'd*, 806 F. App'x 248 (4th Cir. 2020). *But see, Smith v. United States*, 561 F.3d 1090, 1103 (10th Cir. 2009) (holding that IACA did not explicitly foreclose a *Bivens* remedy because IACA did not provide for punitive damages, jury trial, or a forum for the prisoner to address his alleged constitutional violation); *Bagola v. Kindt*, 131 F.3d 632, 638-646 (7th Cir. 1997) (concluding that, although the plaintiff prisoner's "alleged constitutional injury [was] intertwined with his injury covered by the statutory benefits scheme," there exist "significant procedural distinctions" between IACA and the statutory remedies that have been found to preclude *Bivens* claims.").

[5] Separately and in addition, Plaintiff failed to respond to Defendants' arguments concerning the lack of a remedy under *Bivens*, thereby effectively conceding the argument. *Allegrino v. Ruskin Moscou Faltischek, P.C.*, No. 19-CV-08900, 2021 WL 429121, at *8 (S.D.N.Y. Feb. 8, 2021), *aff'd*, No. 21-484-CV, 2021 WL 5500084 (2d Cir. Nov. 24, 2021); *30 Clinton Place Owners Inc. v. City of New Rochelle*, No. 13-CV-03793, 2014 WL 890482, at *1 n.1 (S.D.N.Y. Feb. 27, 2014) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them."). Further, given the conclusions reached herein, the Court need not and does not reach Defendants' alternative arguments regarding Plaintiff's failure to state a claim upon which relief can be granted.

any amendment addressed to Plaintiff's claims under the FTCA and *Bivens* futile, leave to amend is denied. *See, e.g.*, *Bravo*, 684 F. Supp. 3d at 126.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 40; close this case; and to mail a copy of this Opinion and Order to Plaintiff.

**SO ORDERED:**

Dated:  White Plains, New York
       January 4, 2025

Philip M. Halpern
United States District Judge